Esther C. Rodriguez
Nevada State Bar No. 006473
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
esther@rodriguezlaw.com

Don J. Foty*
Texas State Bar No. 24050022
William M. Hogg*
Texas State Bar No. 24087733
California State Bar No. 338196
HODGES & FOTY, LLP
4409 Montrose Boulevard, Suite 200
Houston, Texas 77006
Tel: (713) 523-0001; Fax: (713) 523-1116
dfoty@hftrialfirm.com
whogg@hftrialfirm.com

* To apply for admission *pro hac vice*.

*Attorneys for Plaintiff and Class Members*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DWIGHT MALLOY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Case No. _____<br><br>**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>1) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016;<br><br>2) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>3) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; and<br><br>4) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050. |

# PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND

## I.  INTRODUCTION

1. This is a class action lawsuit brought by Plaintiff Dwight Malloy ("Plaintiff"), individually and on behalf the Class Members to recover unpaid wages, penalties, and attorneys' fees and costs. Defendant Amazon.Com Services, LLC ("Amazon") implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift without pay. This physical and medical examination constitutes compensable time that was worked by the Plaintiff and the Class Members. By failing to pay for this time worked, Amazon has violated Nevada law. In addition to the Plaintiff, Amazon has failed to pay for the time spent undergoing COVID-19 screenings by thousands of other workers across the State of Nevada.

2. Amazon's conduct violates the state laws of Nevada because Amazon failed to pay for all hours worked by its employees, failed to pay overtime wages, and failed to provide itemized wage statements as required by Nevada law.

## II.  JURISDICTION AND VENUE

3. This Court has jurisdiction over subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiff's Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and Defendant are citizens of different states. Moreover, the number of proposed class members in Nevada is believed to exceed 100 individuals.

4. Venue is proper in this District because a substantial portion of the events forming the basis of this suit occurred in or near Las Vegas, Nevada. Plaintiff worked in this District and was denied wages in this District.

5. Amazon is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privileges of conducting activities in the State of Nevada and established minimum contacts sufficient to confer jurisdiction. Amazon does business in Nevada, advertises in Nevada, markets to Nevada consumers, and the violations of the law forming basis of this lawsuit occurred in Nevada. Further, Amazon maintains offices in Nevada and employs Nevada residents.

Therefore, the assumption of jurisdiction over Amazon will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

6. This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III. PARTIES AND PERSONAL JURISDICTION

7. Plaintiff Dwight Malloy is an individual residing in North Las Vegas, Nevada. At all relevant times, Plaintiff has been domiciled in and is a citizen of the State of Nevada.

8. The "Class Members" are all current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Nevada in the three-year period before the filing of the Original Complaint until final resolution of this Action.

9. Defendant Amazon.com Services, LLC is a Delaware limited liability company with its principal place of business located in Seattle, Washington. As such, Defendant is a citizen of both Delaware and Washington for purposes of assessing diversity. Amazon may be served with process through its registered agent in Nevada, Corporation Service Company, 112 North Curry Street, Carson City, Nevada 89703

10. At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and Class Members.

11. At all material times, Plaintiff and Class Members were employees of Amazon within the meaning of NRS 608.010.

### IV. FACTS

12. The novel Coronavirus has infected over 76 million Americans and caused the death of over 900,000 Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited Feb. 7, 2022).[1] Following the outbreak of the Coronavirus, Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check

---

[1] In Nevada, the Coronavirus has infected more than 660,000 Nevada residents, and has resulted in at least 9,000 confirmed deaths. *See* https://nvhealthresponse.nv.gov/, last visited Feb. 7, 2022.

for symptoms of the Coronavirus each shift. This examination was imposed by Amazon as a requirement to work each shift. The examination was conducted on the premises of Amazon, was required by Amazon, and was necessary for each employee to perform his/her work for Amazon. Unfortunately, Amazon refused to pay for this time. Amazon's conduct violates Nevada wage-and-hour law. This illegal conduct continues to this day.

13. Amazon operates fulfillment centers and distribution centers in Nevada and across the country. These Amazon facilities are large warehouses that normally operate 24 hours per day. These Amazon facilities are the warehouses where Amazon stores the packages that are delivered to customers. Upon information and belief, Amazon employs more than 10,000 Nevadans at distribution centers and fulfillment centers throughout the state.

14. Plaintiff worked for Amazon as an hourly, non-exempt employee for Amazon in North Las Vegas. He worked as a fulfillment center associate. His hourly rate was approximately $15.80 to $16.10 per hour. His job duties included moving boxes, stacking packages, and loading boxes. He started with Amazon in approximately August 2020 and stopped working for Amazon in approximately April 2021. He normally worked five days per week and his normal shift was ten hours per day on average. Specifically, he was normally required to work Thursday through Monday, with Tuesdays and Wednesdays off, from 7:00 p.m. to 5:30 a.m. He worked with hundreds of other Amazon workers at the Las Vegas fulfillment center location.

**COVID-19 SCREENING**

15. As an hourly, non-exempt employee, Plaintiff was required to clock-in and clock-out each day. Unfortunately, Amazon did not pay for all hours that he worked. Prior to clocking in each day, Plaintiff was required to undergo a physical and medical examination to screen for COVID-19.

16. Amazon requires its employees to arrive at its fulfillment centers and distribution centers prior to the start of their scheduled shifts. However, when employees of Amazon arrive, they are not allowed to clock-in for the day until they pass a physical and medical examination to screen for symptoms of COVID-19.

17. At the Las Vegas fulfilment center location, for example, Amazon employees were

required to form a line in the entrance to the facility. Amazon employees were then called one-by-one to a checkpoint where the COVID-19 screening took place. Once inside the facility, each employee whose shift is about to start is required to undergo a temperature screening. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee walked to the next station where the employee is allowed to clock-in for the day.

18. If the employee does not initially pass the physical and medical examination, the employee is moved to another section where a second examination occurs. The employee is then asked a series of follow-up questions related to their health condition, such as whether they had trouble breathing, were coughing, had a runny nose, chest pain, and other questions regarding their health. They were also asked questions such as whether the employee has travelled recently, whether the employee was exposed to someone with COVID-19, and other similar questions to identify whether the worker currently has symptoms of COVID-19 and poses a potential health hazard. If the employee passed the second examination, the employee is then given a face mask and is allowed to clock-in for the day. If not, the employee is not permitted to work that day.

19. The amount of time it takes to wait in line and undergo the COVID-19 examination is approximately 5 minutes to 15 minutes on average. This amount of time could be longer depending upon the number of other Amazon employees in line for the COVID-19 screening.

20. Plaintiff knows and is aware that other Amazon facilities in Nevada have COVID-19 screening procedures because there were multiple notices posted around the facility indicating that COVID-19 screening and prevention practices were being instituted across Amazon at a corporate-wide level, not just at the North Las Vegas facility.

21. This COVID-19 screening should have been paid by Amazon because it constitutes compensable time worked. During this time, Plaintiff and Class Members were subject to Amazon's control.

22. Plaintiff and Class Members were required to follow Amazon's instructions while awaiting and during the COVID-19 screening. Amazon required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by

Amazon and its employees were required to comply under threat of discipline, including possible termination.

23. Additionally, Plaintiff and Class Members were confined to the premises of Amazon when they waited for the examinations and during the examinations.

24. Moreover, Amazon compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

25. In other words, Amazon directed, commanded, and restrained its employees during the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and they remained subject to Amazon's control during the examinations.

26. The COVID-19 screenings were also necessary to the principal work performed by the Plaintiff and Class Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Amazon's premises, were controlled and required by Amazon, and undertaken primarily for the benefit of Amazon.

27. Indeed, Amazon required Plaintiff and Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent the Plaintiff and Class Members from inadvertently and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers. Likewise, the job duty of the Plaintiff and Class Members was to serve the customers of Amazon and the screening was necessary to ensure that Plaintiff and Class Members safely provide that service.

28. The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiff and Class Members or affect the business operations of Amazon. If Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon.

29. The COVID-19 screenings were integral and indispensable to the principal activity and

primary job duty performed by Plaintiff and Class Members, which was to serve and assist Amazon customers. The COVID-19 screenings were necessary for Plaintiff and Class Members to perform their primary job duty for Amazon. If Amazon cancelled the COVID-19 screening, the Amazon facilities could get contaminated with the virus, the items that Amazon sold could get contaminated with the virus, the customers could get infected, and other employees of Amazon could get infected. In that event, Amazon's business would be disrupted, and Plaintiff and Class Members would not be able to do their work. Therefore, the COVID-19 screenings were necessary to ensure that Plaintiff and Class Members could do their jobs for Amazon.

30. Under these facts, the COVID-19 screenings were for the benefit of Amazon and its customers. The COVID-19 screenings allowed Amazon's operations to continue and therefore, allowed Amazon to earn a profit. Similarly, the COVID-19 screenings benefited Amazon's customers by allowing them to receive products in a timely basis and to receive products that were not contaminated. Indeed, the COVID-19 screenings were conducted by Amazon with the intent for Amazon to benefit, to earn more profits, and to continue its business. In fact, Amazon's business substantially grew during the pandemic and it appears that the pandemic provided a windfall for Amazon's operations.

31. Under the Nevada Administrative Code, "hours worked" includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(a); *see also In re: Amazon.Com Fulfillment Center FLSA and Wage and Hour Litig.*, 905 F.3d 387, 401 (6th Cir. 2018). The COVID-19 screenings constitute hours worked under Nevada law and should have been paid by Amazon. *In re: Amazon.Com Fulfillment Center FLSA and Wage and Hour Litig.*, 905 F.3d 387, 401 (6th Cir. 2018) (holding that "time spent waiting in line and then undergoing mandatory security screenings" is compensable under Nevada law and that the Portal-to-Portal Act was not incorporated into Nevada law).

32. In light of Amazon's conduct, Plaintiff and Class Members are owed significant unpaid wages and penalties.

33. Plaintiff and Class Members are and were non-exempt employees.

34. Plaintiff and Class Members are paid on an hourly rate basis.

35. When they work more than eight (8) hours in a day or forty (40) hours in a workweek, they are entitled to overtime pay.

36. The COVID-19 screenings identified above were not incidental activities for the Plaintiff and Class Members, but instead, this time was integral and indispensable to their principal activity, was controlled by Amazon, was required by Amazon, was conducted on Amazon's premises, and was performed primarily for the benefit of Amazon and its customers. Therefore, the time spent by the Plaintiff and Class Members completing the COVID-19 screenings is compensable.

37. Although Amazon employs electronic "clocking-in" technology, this technology was not made accessible to Plaintiff and Class Members before the COVID-19 screenings.

38. As a result of Amazon's company-wide policies, Plaintiff and Class Members were not paid for all time worked each day and are owed significant unpaid wages.

39. Amazon's method of paying Plaintiff and Class Members in violation of Nevada law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Amazon knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

### V.     RULE 23 CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the California Class, which is comprised of:

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in Nevada in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

41. <u>Numerosity</u>: The number of members in the Class is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of

the Class will be determined from Amazon's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class and Amazon.

42. <u>Typicality</u>: Plaintiff's claims are typical of the Class because like the members of the Class, Plaintiff was subject to Amazon's uniform policies and practices and were compensated in the same manner as others in the Class. Amazon failed to pay the Class Members for all hours they worked. Additionally, members of the Class worked substantially more than eight (8) hours in a day and forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiff and the Class Members have been uncompensated and/or under-compensated as a result of Amazon's common policies and practices which failed to comply with Nevada law. As such, Plaintiffs' claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Amazon's common course of conduct in violation of law as alleged herein.

43. <u>Adequacy</u>: Plaintiff is a representative party who will fairly and adequately protect the interests of the Class because it is in his interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Nevada law. Plaintiff has retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Class he seeks to represent.

44. <u>Commonality</u>: Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

    a. Whether Plaintiff and the Class are entitled to compensation for the time spent in the COVID-19 screenings;

    b. The amount of time spent in the COVID-19 screenings;

    c. Whether Plaintiff and the Class worked more than eight (8) hours in a day and/or worked more than forty (40) hours in a workweek;

    d. Whether Amazon failed to pay Plaintiff and the Class wages for all hours worked;

    e. Whether Amazon failed to keep accurate records of employees' hours of work,

hourly wages, and hourly rates, and failed to timely furnish each Class Member with a statement accurately showing the total number of hours worked, hourly rates, and wages earned each pay period;

 f. Whether Amazon failed to timely pay employees unpaid wages and overtime due upon their separation of employment with Amazon;

 g. Whether Plaintiff and the Class are entitled to compensatory damages;

 h. The proper measure of damages sustained by Plaintiff and the Class; and

 i. Whether Amazon's actions were "willful."

45. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Amazon, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Amazon.

46. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the California Class is readily identifiable from Amazon's records.

47. This type of case is well-suited for class action treatment because: (1) Amazon's practices, policies, and/or procedures were uniform; (2) the burden is on Amazon to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Amazon to accurately record hours worked by employees. Ultimately, a class action is a

superior form to resolve the Nevada claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Amazon to pay Plaintiff and the Class per applicable Nevada laws.

## VII. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Failure to Pay for All Hours Worked**
**Violation of NRS 608.140 and 608.016**
**On Behalf of Plaintiff and the Class**

48. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

49. Employees such as Plaintiff and Class Members have a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

50. NRS 608.016 provides that "an employer shall pay to the employee wages for each hour the employee worked."

51. Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1). Further, Nevada law incorporates the federal definition of "work," *see In re: Amazon.Com, Inc. Fulfillment Center FLSA and Wage and Hour Litig.*, 905 F.3d 387, 401 (6th Cir. 2018), which includes such physical examinations such as the COVID-19 screenings here. *See* DOL Wage and Hour Opinion Letter, Jan. 27, 1998.

52. Amazon failed to compensate Plaintiff and Class Members for all hours that they worked. As noted above, Plaintiff and Class Members were not paid for the time they spent in the COVID-19 screenings during which they were subjected to physical examinations that were under Amazon's discretion and control, and which was an essential requirement of the job and for Amazon's benefit. As a result, Plaintiff and Class Members are entitled to compensation for all hours worked, but not paid, during the statutory period covered by this lawsuit. Plaintiff and Class Members

are also entitled to reasonable attorneys' fees, interest, and costs of suit, and the relief requested below in the Prayer for Relief.

53. The Class Members, including Plaintiff, have been deprived of their rightfully earned wages as a direct and proximate result of Amazon's company-wide policies and practices in Nevada.

54. Amazon has knowingly and willfully refused to perform its obligations to compensate Plaintiff and the Class for all wages earned and all hours worked, in violation of Nevada law. As a direct result, Plaintiff and the Class have suffered, and continue to suffer, substantial losses related to the use and enjoyment of such wages.

55. Amazon regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Plaintiff and Class Members. Through this unlawful course of conduct, Amazon has deprived and continues to deprive Plaintiff and Class Members of records necessary to calculate with precision the compensation due to them.

56. Plaintiff demands, on behalf of himself and the Class Members, payment by Defendant at their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all hours worked during the relevant time period together with attorneys' fees, costs, interest as provided by law, and the relief requested below in the Prayer for Relief.

57. Wherefore, Plaintiff and the Class request relief as hereinafter provided.

**SECOND CLAIM FOR RELIEF**
**Failure to Pay Minimum Wages**
**Violation of the Nevada Constitution**
**On Behalf of Plaintiff and the Class**

58. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

59. Article 15, Section 16 of the Nevada Constitution sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action

to enforce the section shall be awarded his or her reasonable attorney's fees and costs.

60. By failing to compensate Plaintiff and Class Members for the time spent engaging in the pre-shift COVID-19 screening activities, Defendant failed and continues to fail to pay Plaintiff and Class Members for all hours worked in violation of the Nevada Constitution.

61. Plaintiff demands, on behalf of himself and the Class Members, payment by Defendant at their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all hours worked during the relevant time period together with attorneys' fees, costs, interest as provided by law, and the relief requested below in the Prayer for Relief.

62. Wherefore, Plaintiff and the Class request relief as hereinafter provided.

**THIRD CLAIM FOR RELIEF**
**Failure to Pay Overtime Wages**
**Violation of NRS 608.140 and 608.018**
**On Behalf of Plaintiff and the Class**

63. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

64. NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 an employee's regular wage rate whenever an employee who receives compensation for employment at a rate of 1 1/2 times the minimum rate set forth in NRS 608.250 worked: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee worked a schedule 10 hours per day for 4 calendar days within any scheduled week of work.

65. NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

66. At all relevant times, Amazon was required to compensate its non-exempt employees for all hours worked. Amazon was also required to compensate all of its employees for all overtime worked, at one-and-a-half times their regular rates of pay for hours worked more than eight (8) hours per day or forty (40) hours per workweek.

67. At all relevant times, Amazon operated under and continues to operate under a common policy and plan of willfully, regularly, and repeatedly failing and refusing to pay Plaintiffs and Class Members for overtime at the rates required by NRS 608.018.

68. Amazon knew or clearly should have known that Plaintiffs and the Class Members were entitled to compensation for the time they spent in the COVID-19 screenings.

69. Amazon routinely requires Plaintiffs and Class Members to work more than eight (8) hours per day or forty (40) hours per workweek. Despite the provisions of Nevada's overtime law, Amazon has willfully failed and refused to pay the Class, including Plaintiff, overtime wages during the statutory period covered by this lawsuit.

70. Although the statute of limitations for minimum wage violations is two years, there is no express statute of limitations for overtime violations pursuant to NRS 608.140 and 608.018. Therefore, the three-year limitations period contained in NRS 11.190(3) for statutory violations applies.

71. The Class Members, including Plaintiffs, have been deprived of their rightfully earned overtime wages as a direct and proximate result of Amazon's company-wide policies and procedures.

72. Amazon regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Plaintiff and Class Members. Through this unlawful course of conduct, Amazon has deprived and continues to deprive Plaintiff and the Class Members of records necessary to calculate with precision the overtime compensation due to them.

73. Plaintiff and Class Members are entitled to recover, and seek to recover, damages for the nonpayment of overtime wages for all overtime hours worked in excess of eight (8) hours per day, in excess of forty (40) hours per workweek, plus reasonable attorneys' fees, interest, and costs of suit, interest as provided by law, and the relief requested below in the Prayer for Relief.

74. Wherefore, Plaintiffs and California Class request relief as hereinafter provided.

**FOURTH CLAIM FOR RELIEF**
**Failure to Pay All Wages Due and Owing Upon Termination**
**Violation of NRS 608.140 and 608.020-.050**
**On Behalf of Plaintiff and the Class**

75. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

76. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

77. NRS 608.040(1)(a-b) imposes a penalty on employers who fail to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quite, or was discharged until paid for 30-days, whichever is less."

78. NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purposes of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

79. By failing to pay Plaintiff and Class Members for all hours worked (including minimum wages, regular wages, and/or overtime wages owed) in violation of Nevada law, at the correct legal rate, Amazon has failed to timely remit all wages due and owing to Plaintiff and Class Members who have separated their employment with Amazon during the relevant time period.

80. Despite demand, Amazon willfully refuses and continues to refuse to pay Plaintiff and Class Members all wages due and owing.

81. Plaintiffs, on behalf of themselves and on behalf of the members of the Class who are no longer employed by Amazon, respectfully request that the Court award all penalties due in accordance with NRS 608.140 and 608.040, and an additional thirty (30) days' wages under NRS 608.050, together with attorneys' fees, costs, interest as provided by law, and the relief requested below in the Prayer for Relief.

82. Wherefore, Plaintiff and the Class request relief as hereinafter provided.

## VIII. JURY DEMAND

83. Plaintiff hereby demands trial by jury on all issues.

## IX. PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all Class Members, prays that the Court:

1. Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2. Appoint Plaintiff as Representative of the Class, and appoint his counsel as Class Counsel;

3. Find and declare that Amazon's policies and/or practices described above violate Nevada law;

4. Award all damages, penalties, and/or restitution to be paid by Amazon for the causes of action alleged herein;

5. Award interest at the maximum legal rate, costs, and expenses, including reasonable attorneys' fees and expert fees;

6. Award pre-judgment and post-judgment interest, as provided by law; and

7. Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Date: February 15, 2022

Respectfully submitted,

/s/ Esther C. Rodriguez
Esther C. Rodriguez (Bar No. 006473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
esther@rodriguezlaw.com

Don J. Foty (To Apply *Pro Hac Vice*)
William M. Hogg (To Apply *Pro Hac Vice*)
HODGES & FOTY, LLP
4409 Montrose Boulevard, Suite 200
Houston, Texas 77006
Tel: (713) 523-0001; Fax: (713) 523-1116
dfoty@hftrialfirm.com
whogg@hftrialfirm.com

*Counsel for Plaintiff and Class Members*