MONTGOMERY Y. PAEK, ESQ.
Bar No. 10176
AMY L. THOMPSON, ESQ.
Bar No. 11907
DIANA G. DICKSINSON, ESQ.
Bar No. 13477
EMIL S. KIM, ESQ.
Bar No. 14894
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV  89169-5937
Telephone:     702.862.8800
Email:  mpaek@littler.com
            athompson@littler.com
            ddickinson@littler.com
            ekim@littler.com

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DWIGHT MALLOY, on behalf of himself and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Case No. 2:22-cv-00286-ART-VCF<br><br>**DEFENDANT'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) OR, IN THE ALTERNATIVE, MOTION TO CERTIFY QUESTIONS TO THE NEVADA SUPREME COURT** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Pursuant to 28 U.S.C. § 1292(b), Defendant Amazon.com Services LLC ("Amazon") respectfully requests that this Court certify for interlocutory appeal its March 2, 2023, order (the "Order") denying Amazon's Motion to Dismiss the First Amended Complaint ("Motion to Dismiss"), or, in the alternative, certify questions to the Nevada Supreme Court pursuant to Rule 5 of the Nevada Rules of Appellate Procedure.

This Court's denial of Amazon's motion seeking dismissal of Plaintiff's claim that the time spent in and waiting for pre-shift COVID-19 screenings is compensable under Nevada law presents a clear case for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).  The Order involves

three important legal questions that warrant resolution by the Ninth Circuit: (1) whether Nevada law incorporates the Portal-to-Portal Act ("PPA"); (2) whether pre-shift COVID-19 screenings are "integral and indispensable" to Plaintiff and the purported class's principal activities and therefore compensable under the PPA; and (3) whether time spent undergoing those screening constitutes "work" under Nevada law because it is primarily for the benefit of employers. *See* ECF No. 30; Transcript of Proceedings of Hearing on Amazon's Motion to Dismiss attached hereto as **Exhibit 1**.

A "not otherwise appealable" order "shall" be certified for interlocutory appeal by a district court if that court is "of the opinion" that the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion, and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As set forth below, all three criteria are satisfied here.

First, the questions presented by Plaintiff's claims are controlling, pure questions of law. Whether Nevada law incorporates the PPA is a pure question of law and whether, based on the facts alleged, pre-shift COVID-19 screenings were preliminary to Amazon associates' principal work activities also presents a legal question requiring application of United States Supreme Court precedent in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014), to the alleged facts. Indeed, *Busk* itself was decided on a motion to dismiss. Likewise, whether Amazon was the primary beneficiary of the alleged COVID-19 screenings (i.e. whether the screenings were "work") is a legal issue that requires an assessment of the complaint's allegations against the requirements of Nevada law. If resolved in Amazon's favor on appeal, these issues would "necessitate[] dismissal" of Plaintiff's claims. *Bernal v. Zumiez*, Inc., 2017 WL 4542950, at *2 (E.D. Cal. Oct. 11, 2017).

Second, there is a substantial ground for difference of opinion on the questions presented. As to the first proposed question, while the Sixth Circuit Court of Appeals decision *In Re: Amazon.Com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, 905 F.3d 387, 404 (6th Cir. 2018) held that Nevada law did not incorporate the PPA, that decision is non-binding and is contrary to two unpublished Nevada Supreme Court decisions and a wealth of other indicia showing the Nevada Supreme Court would find the PPA has been incorporated, all of which led Judge Batchelder to dissent in that Sixth Circuit decision because he believed Nevada has implicitly

incorporated the PPA. Thus, for each of the foregoing, there is substantial ground for difference of opinion.

As to the second question - whether pre-shift COVID-19 screenings are integral and indispensable to the principal duties warehouse employees perform - "directly conflicting" decisions exist. *Id.* There is a clear conflict between the District Courts in this Circuit, with Courts reaching precisely opposite conclusions about whether pre-shift COVID-19 screenings for employees performing similar duties are preliminary activities under the PPA. Compare the Order and *Boone v. Amazon.com Services, LLC,* No. 1:21-cv-00241-DAD-BAM, 2022 WL 780215 (E.D. Cal. March 11, 2022),[1] with *Pipich v. O'Reilly Auto Enterprises, LLC*, 2022 WL 788671, at *1, 4 (S.D. Cal. Mar. 15, 2022).[2] An order "clearly merits interlocutory review under section 1292(b)" where there is a "split of authorities on the . . . issue among district courts within the . . . Circuit." *Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 96–97 (2nd Cir. 2017). Furthermore, as to the third question, whether time spend in COVID-19 screening is compensable is plainly "a new legal question" and "is of special consequence." *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) ("[D]istrict courts should not hesitate to certify an interlocutory appeal" where a question "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009). The COVID-19 pandemic was a once-in-a-century event, one that led to unprecedented governmental mandates and guidance and in response to which Amazon, like employers across the country, took action to keep its associates and the community-at-large safe. In this circumstance, "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

---

[1] Note, Amazon filed a Motion for Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(b) in *Boone*, but as that matter is currently stayed, the Court has not ruled on the motion.

[2] *Pipich* is consistent with decisions from the Court of Federal Claims and the Western District of Missouri. *Adegbite v. United States*, 156 Fed. Cl. 495, 506 (2021) (holding that the "time spent passing through the Covid-19 screening" was not "integral to the Plaintiffs' principal activities as correctional officers"); *Alvarez v. United States*, 2021 WL 6163405, at *4 n.2 (Fed. Cl. Dec. 30, 2021) (same); *Adair v. United States*, 2021 WL 6163407, at *5 n.2 (Fed. Cl. Dec. 30, 2021) (same); *Perez v. Walmart, Inc.*, 2021 WL 5741484, at *2 (W.D. Mo. Oct. 25, 2021) (finding screenings were not primarily for the employer's benefit).

Finally, certification would materially advance the ultimate termination of the litigation by determining whether Plaintiff is able to make out a claim at all. A decision by the Ninth Circuit in Amazon's favor on even one of the questions presented would affect the legal issues that would have to be addressed by summary judgment or trial, thereby potentially reducing discovery and other costs associated with this lawsuit substantially. A decision by the Ninth Circuit in Amazon's favor on either the second or third questions presented would require complete dismissal of Plaintiff's claims, which end the litigation. Certification would thus plainly assist in "avoiding the expenditure of time and resources." *Stoutt v. Travis Credit Union,* 2021 WL 1143612, at *2 (E.D. Cal. Mar. 25, 2021).

This is a paradigmatic case for certification of an interlocutory appeal. The issues are novel and controlling questions of law, there plainly is room for reasonable jurists to disagree, and resolution of the questions would materially advance this litigation. Under these circumstances, the Court should grant Amazon's motion to certify for interlocutory appeal to the Ninth Circuit. Alternatively, this Court should certify the following questions to the Nevada Supreme Court pursuant to Rule 5 of the Nevada Rules of Appellate Procedure: (1) Does Nevada law incorporate the PPA?; (2) Are pre-shift COVID-19 screenings "integral and indispensable" to Plaintiff and the purported class's principal activities and therefore compensable under the PPA?; and (3) Does time spent undergoing pre-shift COVID-19 screening constitute "work" under Nevada law because it is primarily for the benefit of employers?

**II.   BACKGROUND**

Plaintiff filed this purported class action on February 15, 2022, alleging that Nevada law entitles him and the purported class to be paid for time they allegedly spent undergoing pre-shift protective screenings for COVID-19, and based on this allegation asserts claims for: (1) failure to compensate for all hours worked in violation of NRS 608.016; (2) failure to pay minimum wage in violation of the Nevada Constitution; (3) failure to pay overtime in violation of NRS 608.018; and (4) failure to timely pay all wages due and owing in violation of NRS 608.020-.050. ECF No. 1. On April 25, 2022, in response to Amazon's initial motion to dismiss, Plaintiff filed a First Amended Complaint ("FAC") asserting the same claims as set forth above. ECF No. 20.

Plaintiff alleges that he worked for Amazon as an hourly, non-exempt employee from

approximately August 2020 to April 2021. *Id.,* ¶ 14. Plaintiff "normally" worked five days a week, his "normal" shift was ten hours a day on average, and he "normally" worked "approximately" 50 hours a week. *Id.* He was paid an hourly rate between $15.80 - $16.10 per hour. *Id.* Plaintiff worked as a "fulfillment center associate" and "[h]is job duties included moving boxes, stacking packages, and loading boxes." *Id.* As described in the FAC, "the novel Coronavirus has infected over 81 million Americans and caused the death of over 900,000 Americans." *Id.*, ¶ 12. In response to this pandemic, "Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift." *Id.* Each employee underwent a temperature check and answered questions about his/her health, including follow-up questions if the employee did not "pass" the initial screening. *Id.* ¶¶ 18-19. The examination, which was undertaken on Amazon's premises prior to the start of the employees' shifts and prior to clocking-in, was a requirement to work each shift. *Id.*, ¶¶ 12, 16. The examination, inclusive of time waiting in line, took "approximately 10 minutes to 15 minutes on average." *Id.*, ¶ 20. Amazon did not pay the employees for this time. *Id.*, ¶ 12.

As alleged, "Amazon required Plaintiff and Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent the Plaintiff and Class Members from inadvertently and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers." *Id.*, ¶ 28. Plaintiff additionally alleged:

> The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiff and Class Members or affect the business operations of Amazon. If Amazon did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon.

*Id.*, ¶ 29.

Importantly, the State of Nevada enlisted employers to assist in inhibiting the spread of COVID-19. As early as April 14, 2020, Nevada's Occupational Safety & Health Administration ("Nevada OSHA") was recommending that essential businesses, such as Amazon, "[c]onduct daily surveys of changes to staff/labor health conditions." Exhibit B to ECF No. 22. Nevada OSHA required employers to "Develop Policies and Procedures for Prompt Identification and Isolation of

Sick People, if Appropriate." *Id.*; Exhibit C to ECF No. 22. On May 7, 2020, the Governor of Nevada issued Declaration of Emergency Directive #018 which stated "All businesses must adopt measures that meet or exceed the standards promulgated by NV OSHA to minimize the risk of spread of COVID-19. *Id.* The following day, Nevada OSHA took it a step further, and instructed that employers were to "implement COVID-19 Prevention Programs", noting that the "most effective" would include "adopting measures to ensure that workers who are infected or potentially infected are separated and sent home from the workplace." *Id.*

On May 9, 2023, Amazon moved to dismiss Plaintiffs' claims in the FAC. ECF No. 22. In relevant part, Amazon asserted that the time that Plaintiff claims he and others spent undergoing COVID-19 screenings is not compensable as it does not constitute "hours worked" under Nevada law because it was not spent primarily for Amazon's benefit. Amazon further moved as the time spent in screening was not indispensable and integral to the employees' primary duties and, thus, not compensable time under the PPA. Because all of Plaintiff's claims were predicated on this time being compensable, Amazon asserted that each claim in the FAC fails.

On March 2, 2023, after hearing oral argument, the Court denied the Motion to Dismiss. *See* ECF No. 30. In relevant part, the Court held that Nevada "has not incorporated the Portal-to-Portal Act" and that "Nevada law requires that an employer pay an employee for all work." **Exhibit 1**, p. 54-55. The Court further held that the time spent in and waiting for COVID-19 screenings "was work" and stated that the Court did not "need to address the integral and indispensable aspect of the test because that is terminology used in the compensable work framework [and] I don't think that that applies, based on the statutes and the careful analysis of the Sixth Circuit in *In Re: Amazon*." *Id.* at p. 56-57.

### III.  ARGUMENT

#### A.  This Matter Presents a Clear Case for Certification of Interlocutory Appeal.

This Court should certify its order denying Amazon's Motion to Dismiss for immediate appeal to the Ninth Circuit under 28 U.S.C. § 1292(b). Section 1292(b) sets forth three requirements for certifying an order for interlocutory appeal: (1) the "order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from

the order may materially advance the ultimate termination of the litigation." This Court's order denying Amazon's Motion to Dismiss satisfies each of these requirements.

### 1. The Order Decided Controlling Questions of Law.

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. A quintessential example of a controlling question of law is one that affects the Court's ability to "render a binding decision," such as a ruling on the merits of a plaintiff's claim. *Id.* at 1027. Each of the issues presented readily satisfy that test because they are "pure legal question[s] presented by the pleadings"; "an affirmative answer results in the survival of" the claims, while "a contrary one necessitates dismissal." *Bernal v. Zumiez, Inc.*, No. 2:16-cv-01802-SB, 2017 WL 4542950, at *2 (E.D. Cal. Oct. 11, 2017). Notably, there is no requirement that a question or questions entirely dispose of the case, as "§ 1292 does not require such." *Id.; see also In re Prewitt*, 2020 WL 2121430, at *2 (C.D. Cal. Jan. 9, 2020) (To constitute a controlling question of law, "resolution of the issue need not dispose of the case entirely.").

#### a. Whether Nevada Law Incorporates the PPA is a Controlling Question of Law.

As the Court held, "all of the arguments here turn on the definition of work under Nevada law … and there is an argument made that … what we should be looking at is whether this screening time is compensable work … that rests on the premise that Nevada has incorporated the [PPA] .. [a]nd I find that it has not done so." **Exhibit 1**, p. 53-54. The PPA was passed by Congress in 1947 to address the "flood of litigation" that the Supreme Court's definition of work in *Tennesssee Coal* and its progeny had spawned; litigation which Congress deemed could "bring about the financial ruin of many employers." *Busk,* 574 U.S. at 32 (quoting 29 U.S.C. § 251(a)–(b)). Thus, the PPA "exempted employers from liability for . . . 'activities which are preliminary to or postliminary to [the employee's] principal activity or activities.'" *Id.* at 32-33 (quoting 29 U.S.C. § 254(a)).

The Court's determination that Nevada law does not incorporate the PPA is plainly a conclusion of law. That it is a controlling question of law cannot be seriously questioned given that the Court, having come to its conclusion, held "I don't need to address the integral and indispensable

7.

aspect of the test … I don't think that that applies." **Exhibit 1** at 56-57. "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. If the PPA is incorporated into Nevada law and Amazon meets its terms, it would prevail on this case in its entirety. The Court's legal conclusion that the PPA is not incorporated in Nevada law, therefore, "materially affect(s) the outcome of [this] litigation." *Id.* at 1026.

          **b.**      **Whether Time Spent in COVID-19 Screening Is Preliminary to Plaintiff's Principal Activities Is a Controlling Question of Law.**

Whether the alleged COVID-19 screenings were integral and indispensable to Plaintiff's stated work duties is also a legal question that, if answered in Amazon's favor, would require dismissal of his claims. Under the PPA, "activities which are preliminary to . . . principal activity or activities" are not compensable. 29 U.S.C. § 254(a)(2). The Supreme Court made clear in *Busk* that, even if an activity is work-related, it is not compensable unless it is either a principal activity the employee is employed to perform or "integral and indispensable to" principal activities, meaning it is "an intrinsic element of those [principal] activities and one with which the employee cannot dispense if he is to perform those activities." 574 U.S. at 35. In *Busk*, the Supreme Court unanimously held that the plaintiffs had failed to state a claim under Fair Labor Standards Act ("FLSA"), because security screenings performed at Amazon warehouses "were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment" and "time spent waiting to undergo and undergoing" those screenings was thus not compensable. *Id.* at 35-36. Whether the screening of employees at Amazon warehouses alleged by plaintiffs in *Busk* was integral and indispensable to their principal work duties was a dispositive legal question decided on a motion to dismiss.

In *Pipich and Perez*, the court addressed the same question presented here in granting the defendant's motions to dismiss. In *Pipich*, the Court applied *Busk* and explained that COVID-19 "screening was not an intrinsic element of the loading and transporting of products to the stores"; they "were not indispensable to the employees' duties because O'Reilly could eliminate them completely without hindering the employees' ability to perform their duties." 2022 WL 788671, at *4. Similarly, in *Perez*, the court applied *Busk* and held "the medical screenings are not integral and indispensable

8.

because they are not the principal activities which plaintiff was employed to perform." 2021 WL 5741484, at *4. Thus, the FLSA claim failed as a matter of law in both *Pipich and Perez*. Plaintiff's claims in this case necessarily fail for similar reasons.

### c. Whether Time Spent in COVID-19 Screening Primarily Benefits the Employer Is a Controlling Question of Law.

Under the FLSA, which Nevada law follows, work is defined as any activity "controlled or required by the employer and pursued *necessarily and primarily for the benefit of the employer* and his business." *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31 (2014) (quotation omitted) (emphasis added); *Terry v. Sapphire Gentlemen's Club*, 130 Nev. 879 (2014) (in deciding wage-and-hour issues, Nevada courts look to the FLSA unless Nevada's statutory language is materially different from or inconsistent with it). Whether pre-shift COVID-19 screenings, as alleged, primarily benefit Amazon (or other similar companies in the warehousing and delivery industries) is a legal question that, if answered in the negative, would foreclose each of Plaintiff's claims – if none of his time in the screenings was work, he is owed nothing.

The primary beneficiary question is a legal issue in this context, as for purposes of the Motion to Dismiss, the facts are not in dispute. Plaintiff has alleged that a COVID-19 outbreak at an Amazon fulfillment center would be disruptive to business operations. ECF No. 20, ¶ 30. In response, Amazon has pointed to federal, state, and local authorities that recommended or required COVID-19 screening as part of a national public health response. ECF No. 22 at 3-5, 6-8. Whether an employer is the primary beneficiary of its efforts taken to protect employees and the public is a question that is regularly decided as a matter of law. For example, in *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340 (11th Cir. 2007), the court held that construction workers at Miami International Airport were not engaging in compensable work when they went through security screenings mandated by the Federal Aviation Administration.

Whether Amazon was the primary beneficiary of the COVID-19 screenings is also controlling. If Amazon was not the primary beneficiary of the screenings, then the screenings are not compensable "work." Since Plaintiff's claim hinges entirely on the contention that time spent in and waiting for COVID-19 screenings should have been paid, a win for Amazon on appeal "necessitates dismissal."

*Bernal*, 2017 WL 4542950, at *2.

### 2. There Are Substantial Grounds for Difference of Opinion on Each of the Questions Presented.

"[T]here is substantial ground for difference of opinion" on each of the questions presented for certification. 28 U.S.C. § 1292(b). "A substantial ground for difference of opinion exists where reasonable jurists *might* disagree on an issue's resolution, not merely where they have already disagreed." *Reese*, 643 F.3d at 688 (emphasis added). Of course, that standard can be met if there is a case "directly conflicting" with the district court's decision, as is true here. *Id.*; *see also, e.g., Mei Xing Yu*, 874 F.3d at 96–97 (an order "clearly merits interlocutory review under section 1292(b)" where there is a "split of authorities on the . . . issue among district courts within the . . . Circuit"); *McDonnel Grp., LLC v. Starr Surplus Lines Ins. Co.*, 2020 WL 1064912, at *3 (E.D. La. Mar. 5, 2020) ("there is substantial ground for disagreement" where district courts have "addressed similar [circumstances] and decided the issue differently"); *McShannock v. JP Morgan Chase Bank N.A.*, 2019 WL 955289, at *1 (N.D. Cal. Feb. 27, 2019) (noting that a conflict among district courts constitutes a substantial ground for disagreement).

Moreover, "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688. As the Supreme Court has explained, "district courts should not hesitate to certify an interlocutory appeal" where a question "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009). "Courts traditionally will find that a substantial ground for difference of opinion exists where novel and difficult questions of first impression exist." *Carr*, 2018 WL 3913810, at *2.

### a. Reasonable Jurists Could Disagree on the Question of Whether Nevada Law Incorporates the PPA.

There is no binding precedent holding that Nevada has, or has not, adopted the PPA. It is well-settled under Nevada law that when interpreting a statute, "it is presumed that in enacting a statute the legislature acts with full knowledge of existing statutes relating to the same subject." *City of Boulder v. General Sales Drivers*, 101 Nev. 117, 118–19 (1985). The PPA was enacted in 1947 while the relevant Nevada laws, NRS 608.018 and NRS 608.016, were enacted in 1975 and 1985, respectively.

1  Further, case after case, including two unpublished cases from the Nevada Supreme Court, holds that
2  Nevada law mirrors the FLSA, of which the PPA is a part. *See Rivera v. Pen & Sons Farms, Inc.*, 735
3  F.3d 892, 900-01 (9th Cir. 2013) (finding that Nevada courts would likely "interpret Nevada law to
4  follow federal law" on wage and hour issues where the state and federal statutes do not "contain
5  materially different language"); *Johnson v. Pink Spot Vapors Inc.*, 2015 WL 433503, *6, Case No. 2-
6  14-cv-1960-JCM-GWF (D. Nev. Feb. 3, 2015) (holding that "analysis of plaintiffs' FLSA claims is
7  also applicable to [plaintiffs'] claim" under NRS 608.250); *Rite of Passage v. Nevada Department of
8  Business and Industry*, 131 Nev. 1338, 2015 WL 9484735, at *1 (Dec. 23, 2015) (deciding the meaning
9  of "work" under NRS 608.016 based on the FLSA and federal case law); *Csomos v. Venetian Casino
10 Resort, LLC*, 128 Nev. 891, 381 P.3d 605, *3 (2012) (finding that NRS 608.018 tracks the FLSA).

11       Plaintiff proffers that in the absence of a direct incorporation of the PPA into Nevada law, a
12 court should find that it is not incorporated and, further, relies on a non-binding Sixth Circuit case *In
13 Re Amazon* in which the Court found the PPA was not incorporated in Nevada law. ECF No. 23 at 12.
14 The Nevada Supreme Court, however, has clearly indicated that the default is to include the FLSA's
15 provisions in Nevada wage and hour law when Nevada law is silent, not to exclude them. *See Terry
16 v. Sapphire Gentlemen's Club*, 130 Nev. 879 (2014) (in deciding wage-and-hour issues, Nevada courts
17 look to the FLSA unless Nevada's statutory language is materially different from or inconsistent with
18 it). Additionally, Judge Batchelder explicitly disagreed with the majority's analysis of the Nevada-
19 law claims in *In Re Amazon*, noting that he "would expect the Nevada Supreme Court to find that
20 Nevada's wage-and-hour statutes do not differ materially from the FLSA, so they <u>implicitly
21 incorporate the Portal-to-Portal Act's exclusions</u>, and therefore time spent undergoing security checks
22 is not compensable." 905 F.3d at 408 (emphasis added). Reasonable jurists could disagree as to
23 whether Nevada law incorporates the PPA and, therefore, a "substantial ground for difference of
24 opinion" exists. 28 U.S.C. § 1292(b).

25         **b.    Reasonable Jurists Have Disagreed on the Question of Whether Time Spent in Pre-Shift COVID-19 Screening Is Preliminary to Employee's Principal Activities in the Warehouse and Delivery Industries.**

27 Whether the time spent in pre-shift COVID-19 screenings is preliminary to Plaintiff's principal

activities is a novel question on which reasonable jurists have disagreed. Judges in the Southern District of California and for the Court of Federal Claims have disagreed with this Court about whether pre-shift COVID-19 screenings are integral and indispensable to employees' principal work activities. *See Pipich*, 2022 WL 788671, at *4 (defendant "did not hire [its] employees to undergo health screenings" and, thus, the screenings "do not share the required nexus with Plaintiff's duties . . . to make the screening a compensable activity"); *Adegbite*, 156 Fed. Cl. at 506; *Alvarez*, 2021 WL 6163405, at *4 n.2 (holding that the "time spent passing through the Covid-19 screening" was not "integral to the Plaintiffs' principal activities as correctional officers"); *Adair*, 2021 WL 6163407, at *5 n.2 (holding that "Plaintiffs' alleged primary duties do not include preventing the spread of COVID-19 or responsibility for inmate health in general" and thus the "health screenings are not integral to Plaintiffs' alleged principal activity of maintaining safety and security at USP Lee"). And the court in *Perez* also held that pre-shift COVID-19 screenings were not integral and indispensable, applying *Busk* in dismissing a state law claim. 2021 WL 5741484, at *4.

For example, the court in *Pipich* dismissed a suit seeking damages under the FLSA for time spent in COVID-19 screening and held that under *Busk* COVID-19 screening is a non-compensable preliminary activity under the PPA. 2022 WL 788671, at *4. The circumstances presented in *Pipich* are materially indistinguishable from the facts alleged in this case. Plaintiff here alleges that, after he arrived at Amazon facilities but before he could clock in and start work, Amazon associates were asked questions about whether they have recently been exposed to COVID-19 and whether they have any symptoms of COVID-19 and had their temperature taken. FAC ¶¶ 17-19. Similarly, the plaintiffs in *Pipich* alleged that after arriving at their employer's premises but before clocking in, they were "ask[ed] a series of questions related to [their] potential exposure to the virus and present health symptoms" and had their temperature taken. 2022 WL 788671, at *1. Plaintiff in this case alleges that his job duties included "moving boxes, stacking packages, and loading boxes." FAC ¶ 14. The job duties of the plaintiffs in *Pipich* were quite similar: "storing inventory, reviewing and selecting orders, pulling specific parts according to retailers' needs, packing orders, and loading and delivering orders." 2022 WL 788671, at *1.

Considering the facts alleged by plaintiffs in *Pipich*, Judge Lorenz concluded that "pre-shift

1   COVID screenings [are] not 'integral and indispensable' to the employees' duties because the
2   screening [is] not an intrinsic element of the loading and transporting of products to the stores. The
3   screenings [are] not indispensable to the employees' duties because [the defendant] could eliminate
4   them completely without hindering the employees' ability to perform their duties." *Id.* at *4. Judge
5   Lorenz rejected plaintiffs' argument that COVID-19 "screenings are indispensable because they
6   cannot be eliminated without jeopardizing employee safety and creating business risks." *Id.* at *3.

7   Similarly, in *Adegbite*, Judge Meyers of the Court of Federal Claims held that correctional
8   workers at a federal prison in Oregon had not stated an FLSA claim for time spent in COVID-19
9   screenings. "Plaintiffs argue[d] that passing through the health screening that is necessitated by the
10  COVID-19 pandemic is part of their primary activity of 'maintain[ing] the of [sic] the safety and
11  security of the Institution.'" *Adegbite*, 156 Fed. Cl. at 506 (citation omitted). The *Adegbite* Court
12  disagreed, explaining that "preventing the coronavirus from getting into and/or spreading within the
13  Institution is not integral to Plaintiffs' principal activities." *Id.* Another judge on that court agreed in
14  separate cases concerning other federal correctional officers. *See Alvarez*, 2021 WL 6163405, at *4
15  n.2 (concluding that COVID-19 "health screenings are not integral to Plaintiffs' alleged principal
16  activity of maintaining safety and security at [the prison], and, consequently, are non-compensable");
17  *Adair*, 2021 WL 6163407, at *5 n.2 (same).

18  Moreover, in *Perez*, Judge Sachs of the Western District of Missouri also considered whether
19  COVID-19 screenings were integral and indispensable under state law to the job of an employee whose
20  work included, among other things, "stocking and unloading [merchandise]." *Perez*, 2021 WL
21  5741484, at *4. Like the courts in *Pipich*, *Adegbite*, *Alvarez*, and *Adair*, Judge Sachs concluded that
22  they are not. *Id.* at *4.

23  These decisions "directly conflict" with this Court's order. *Reese*, 643 F.3d at 688. It is clear,
24  therefore, that reasonable jurists could disagree with this Court's holding because multiple judges in
25  fact have come to the opposite conclusion. Where, as here, district courts have "addressed similar
26  [circumstances] and decided the issue differently," "there is substantial ground for disagreement" to
27  warrant certification. *McDonnel Grp.*, 2020 WL 1064912, at *3.
28  / / /

13.

        **c.**      **Reasonable Jurists Have Disagreed on the Question of Whether Time Spent in COVID-19 Screening Primarily Benefits the Employer.**

Likewise, whether time spent in and waiting for COVID-19 screening time is work undoubtedly presents novel legal questions on which reasonable jurists have disagreed; COVID-19 screening simply did not exist before spring 2020. There is no binding authority that directly addresses whether a pervasive, public health measure like COVID-19 screenings - implemented under temporary, emergency conditions - constitutes "work" because it primarily benefits employers. *See Perez*, 2021 WL 5741484, at *1 ("[T]he court has been unable to locate case law precisely on th[e] issue [of whether COVID-19 screenings are compensable]. While a number of courts have ruled on claims of pre-shift and/or post-shift unpaid compensable work to change clothes or prepare equipment, these complaints have not arisen in the context of the present pandemic.").

In particular, reasonable jurists could agree with Amazon's argument that the fact that COVID-19 screenings are conducted in accordance with regulations and guidelines issued by federal, state, and local authorities underscores that these screenings benefit Amazon associates and the public at large and are not undertaken primarily for Amazon's benefit. Such requirements and guidance from government agencies demonstrate that, while Amazon benefits from measures to reduce the spread of COVID-19, it does so in the same way all members of the public benefit from responsible precautions to slow the spread of the virus. At a minimum, then, the question presented is a "novel and difficult question" on which "substantial ground for difference of opinion exists." *Carr*, 2018 WL 3913810, at *2.

Moreover, several courts have found that similar screenings were not done primarily for the benefit of the employer. For example, in *Perez*, the plaintiff sued her employer for compensation for time spent in COVID-19 screenings, which consisted of a "physical and medical examination to check for symptoms of COVID-19 each shift," on a theory of unjust enrichment under Missouri law. *Id.* at *1. Much like here, the plaintiff's job duties included: "stocking and unloading [merchandise]; assist customers find products; perform cashier and front-end services; and acknowledge and greet customers" in a retail store (Walmart). *Id.* at *4. She argued that her employer had been unjustly enriched because it did not pay her for the screening time. *Id.* at *1.

14.

The court granted the employer's motion to dismiss, recognizing that "the benefits of a healthy and safe working environment have been conferred on both parties," and that "there is little doubt that plaintiff, defendants, and their consumers, contractors, and all persons entering the stores were the beneficiaries of the early detection health and safety protocols." *Id.* at *2-3. Because "the facts demonstrate[d] mutual benefits to the parties . . . [the] plaintiff fail[ed] to show that defendants were or unjustly enriched." *Id.* This kind of "split of authorities" "clearly merits interlocutory review under section 1292(b)." *Mei Xing Yu*, 874 F.3d at 96–97.

### 3. Immediate Appeal Will Materially Advance the Termination of This Litigation

Certification would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because resolution of the questions presented in Amazon's favor would "appreciably shorten the time, effort, or expense of conducting" the district court proceedings. *In re Cement*, 673 F.2d at 1027. The questions presented, if answered in Amazon's favor, are dispositive of the claims; indeed, if Amazon wins the appeal on either the second or third issue, Plaintiff's claims would necessarily be dismissed. The potential dismissal of the Plaintiff's claims is especially significant here where the continuation of a class action carries the additional costs and burdens of classwide discovery, class certification motion practice, and classwide summary judgment and trial issues. Thus, certification would plainly assist in "avoiding the expenditure of time and resources." *Stoutt*, 2021 WL 1143612, at *2; *see also, e.g.*, *Avrahami v. Clark*, 2021 WL 1022542, at *2 (D. Ariz. Feb. 12, 2021) (finding third prong of the section 1292(b) test satisfied where "less discovery may result and the termination of the case will be advanced.").

### B. Alternatively, This Matter Meets the Criteria for Certification of Questions to the Nevada Supreme Court.

Rule 5 of the Nevada Rules of Appellate Procedure ("NRAP") provides that the Nevada Supreme Court can answer questions of law certified to it by a United States District Court where the questions of law "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decision of the supreme court of this state." *See also Life Ins. Co. v. Wollett*, 104 Nev. 687, 688, 766 P.2d 893 (1988). Ultimately, "the decision to certify a question to a state supreme court rests in the sound discretion of

the district court." *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1087 (9th Cir. 2003) (internal citations and quotation marks omitted).

As set forth by the Nevada Supreme Court, certified questions of law "may be determinative" within the meaning of NRAP 5 if the answer may be determinative of the case in whole or in part, there is not controlling Nevada precedent, and the answer will help settle important questions of law. *Volvo Cars of North America, Inc. v. Ricci*, 122 Nev. 746, 750-51, 138 P.3d 1161 (2006). The Ninth Circuit casts the test similarly, stating that "[i]n deciding whether to exercise [its] discretion [to certify a question under NRAP 5], [the Court] consider[s]: (1) whether the question presents important public policy ramifications yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) the spirit of comity and federalism." *High Country Paving, Inc. v. United Fire & Casualty Co.*, 14 F.4th 976, 978 (9th Cir. 2021) (citation and quotations omitted).

Here, Amazon requests this Court to certify three questions of law to the Nevada Supreme Court: (1) Does Nevada law incorporates the PPA?; (2) Are pre-shift COVID-19 screenings "integral and indispensable" to Plaintiff and the purported class's principal activities and therefore compensable under the PPA?; and (3) Does time spent undergoing pre-shift COVID-19 screening constitute "work" under Nevada law because it is primarily for the benefit of employers?

These questions are of significant importance to the State of Nevada, as they are "issue[s] of first impression and ha[ve] significant implications for Nevada's wage protection law." *Boucher v. Shaw*, 483 F.3d 613, 616 (9th Cir. 2007), certified question answered, 124 Nev. 1164, 196 P.3d 959 (2008). The answers to the presented questions are determinative of Plaintiff's claims, and are important questions of law, as the answer to each affects the wages that are legally required to be paid to virtually all, if not all, non-exempt employees in the state of Nevada.

COVID-19 screenings arose in the course of a once-in-a-century pandemic and there is simply no binding precedent in the state of Nevada that controls the questions of whether the PPA applies, whether such screenings are work, or whether they are integral and indispensable to Plaintiff's – indeed to any employee's – principal activities. The issues surrounding these screenings are plainly new and substantial. Given the mandates and guidelines with respect to combatting COVID-19 that the State

of Nevada set out for essential businesses such as Amazon, the questions surrounding the compensability of these screenings have broad application. Considerations of comity and federalism also support permitting the Nevada Supreme Court to determine Nevada law in this arena.

Notably, courts have repeatedly certified questions related to wage and hour issues to the Nevada Supreme Court, showing their importance. *E.g. Hanks v. Briad Rest. Grp., LLC.,* No. 2:14-cv-00786-GMN-PAL, 2015 WL 11121588 (D. Nev. Sept. 15, 2015) (certifying question of "[w]hether an employee must actually enroll in health benefits offered by an employer before the employer may pay that employee at the lower-tier wage under the Minimum Wage Amendment"); *Boucher v. Shaw*, 483 F.3d 613, 616 (9th Cir. 2007) (certifying the issue of the meaning of "employer" under wage and hour law); *Castillo v. Western Range Assoc.*, 3:16-cv-00237-RCJ-CLB, 2022 WL 4466184 at * 7 (D. Nev. Sept. 26, 2022) (certifying the question of what constitutes work, specifically whether "Nevada law require[s] [defendant] to pay [plaintiff] 24 hours of wages for every day worked [as a sheepherder]… [where he was not allowed to leave and] was always performing some job duties."); *Echeverria v. Nevada*, No. 3:14-cv-00320-MMD-WGC, 2020 WL 3893594 at *3-4 (D. Nev. Jul. 10, 2020) (certifying question of whether Nevada has consented to suit under the FLSA or analogous state law). This Court should follow suit.

## IV.     CONCLUSION

For the foregoing reasons, Amazon respectfully request the Court to grant its Motion for Certification of Interlocutory Appeal under 28 U.S.C. § 1292(b) or, in the alternative, Motion to Certify Questions to the Nevada Supreme Court.

Dated:  April 3, 2023

Respectfully submitted,

*Diana Dickinson*
_____
MONTGOMERY Y. PAEK, ESQ.
AMY L. THOMPSON, ESQ.
DIANA G. DICKINSON, ESQ.
EMIL S. KIM, ESQ.
Attorneys for Defendant

**PROOF OF SERVICE**

I am a resident of the State of Nevada over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, NV 89169.5937  On April 3, 2023, I served the within document(s):

**DEFENDANT'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) OR, IN THE ALTERNATIVE, MOTION TO CERTIFY QUESTIONS TO THE NEVADA SUPREME COURT**

☒ By **CM/ECF Filing** – Pursuant to FRCP 5(b)(3) and LR 5-1, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

| | |
|---|---|
| Don J. Foty<br>William Marshall Hogg<br>HODGES & FOTY, LLP<br>2 Greenway Plaza, Suite 250<br>Houston, TX 77046<br>Email: dfoty@hftrialfirm.com<br>           whogg@kennedyhodges.com<br><br>*Attorneys for Plaintiff Dwight Malloy* | Esther C. Rodriguez<br>RODRIGUEZ LAW OFFICES, PC<br>10161 Park Run Drive, Suite 150<br>Las Vegas, NV 89145<br>Email: esther@rodriguezlaw.com<br><br><br><br>*Attorneys for Plaintiff Dwight Malloy* |

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 3, 2023, at Las Vegas, Nevada.

/s/ Joanne Conti
Joanne Conti
Littler Mendelson

4879-8739-7463.2 / 096748-1009

18.